MAYNARD & CHILD *v.* UNITED STATES (No. 1870).[1]

CONSTRUCTION, PARAGRAPH 172, TARIFF ACT OF 1913—"BOXES * * * CONTAINING * * * LEMONS."

The expression, "boxes * * * containing * * * lemons," in paragraph 172, tariff act of 1913, does not mean that boxes, to be dutiable under the paragraph, must have a substantial value after the lemons have been sold out of them. The usual and ordinary lemon boxes containing lemons when imported are dutiable under the paragraph, notwithstanding they are so frail as to have little or no value after having discharged their function as containers of lemons and are not salable except possibly for kindling or some very inferior use.

United States Court of Customs Appeals, March 6, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8087 (T. D. 37313). [Affirmed.]

*Gerry & Wakefield* and *Joseph F. Lockett* for appellants.

*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument Feb. 14, 1918, by Mr. Wakefield and Mr. Lockett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise the subject of controversy in this case consists of lemon boxes imported full of lemons.

---
[1] T. D. 37581 (34 Treas. Dec., 237).

Lemons are made subject to a specific duty under paragraph 220 of the act of 1913. Paragraph 172 provides a duty of 15 per cent on "boxes, barrels, or other articles containing oranges, lemons, limes, grapefruit, shaddocks, or pomelos."

The boxes were assessed for duty under the provision last quoted, and it is contended by the importers that they are free of duty.

The evidence offered by the importers tended to show that these boxes when imported with their contents are exhibited on the docks with their contents, sold at auction with their contents, delivered to the purchaser in that form, and enter into commerce in that condition. It was shown that they are so frail that they are of little or no value after their final use by the retailer. and there was testimony tending to show that they are not salable except possibly for kindling or some very inferior use.

But the testimony went further than this. In the effort to show that the boxes produced were fair samples of lemon boxes, the importers' witnesses gave testimony. tending to show that all lemon boxes were of like character.

The claim of the importers rests upon the ground that these boxes are not importations, for the reason that they do not enter into the commerce of the country. The fault with this reasoning lies in assuming that Congress has not imposed a duty upon lemon boxes except in cases where the box, after having performed its office or service in holding the lemons during importation, during the various sales until it reaches the consumer, and until the lemons are sold out of the box by the retailer, has a substantial value remaining. The difficulty with this reasoning is that it leaves no office for the statute to perform, as the evidence makes it manifest that no lemon boxes retain any substantial value after having gone through with the various uses to which reference has been made.

It is impossible to read the language of this statute without being convinced that the boxes in question are precisely defined. No doubt they are boxes, no doubt they contain lemons, and boxes containing lemons are made the subject of duty. It is said, indeed, that the boxes were in such a broken, damaged, and worthless condition as to render them useless and of no value whatever as articles of commerce. If by this it is meant that they are of no value as articles of commerce after they have been used as holders during the auction sale, during the transfer to the retail dealer, and after the lemons have been sold out of them, there would be some support for this contention. But that the great mass of the boxes are intact and performing their office fully when the lemons are imported appears conclusively by the testimony.

The real point, we take it, intended to be made is that because these boxes can only perform the office of holding the lemons until

they have reached the consumer that they have not entered into the commerce of the country and are not subject to duty.   The cases cited holding that articles which arrive in condition so damaged as to be of no use or value in the commerce of the country are not imported and hence are not dutiable have not force to overcome the plain language of the statute, which imposes a duty upon boxes containing lemons.   *They have sufficient value to fulfill the office which Congress has defined as a condition to their dutiability.*

The reasoning of the very clear opinion by the Board of General Appraisers is amply sufficient to cover the case.   But as reliance is placed upon our own decisions in the cases of United States *v.* Marx (1 Ct. Cust. Appls., 152; T. D. 31210), United States *v.* Garramone (2 Ct. Cust. Appls., 30; T. D. 31577), and United States *v.* Braun Chemical Co. (2 Ct. Cust. Appls., 57; T. D. 31596) a reference to just what was decided in these cases may not be amiss.

In United States *v.* Marx, the question was whether large, cylindrical iron vessels or drums fitted with a bung closed by a screw cap, having two round iron hoops placed at the ends and two near the middle and containing glycerin when imported, fell within the provisions of paragraph 151 of the act of 1909 as "cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty."   After reviewing the history of the legislation at length, the court reached the conclusion that such tanks did fall within the provisions of the paragraph.

It was sought in the case of United States *v.* Garramone, supra, to extend this holding to include tin cans containing tomato sauce and the like.   It was said in the course of the opinion that there was a manifest difference between the containers dealt with in the Marx case and those under consideration.   We quote:

As appears in that case, they were strongly built and of such strength, durability, and weight as to adequately serve the purpose of a container not only for one but also for successive importations of a substance so heavy that a wooden barrel had been found inadequate therefor

These facts of themselves, taken in connection with the size of the drums, warrant the inference that they had a considerable value; that they were susceptible of other uses, either as containers or as holders of substances other than glycerin and might be used permanently therefor; and the fact that they were in some instances sold instead of being used for subsequent importations would warrant the presumption that they entered into the commerce of this country in competition with similar articles manufactured here.

\*          \*          \*          \*          \*          \*          \*

To hold that these tin cans are cylindrical or tubular tanks or vessels for holding gas, liquids, or other material within the meaning of paragraph 151 would be attributing to Congress a lack of ordinary sense and to the words of the paragraph a meaning which we think it was never intended should attach thereto.

In the case of United States *v.* Braun Chemical Co., the containers were somewhat different.   The evidence showed that they

were cylindrical in shape; that chemical salts were contained therein which were heated and poured into the drums through a cap about 6 inches in diameter; that thereafter the contents solidify; that the only way of removing the same from the drum is by cutting it in two; and that it was not possible to remove the contents by heating the same and the drum, because the heat would cause the drum to come apart. The evidence did not disclose that the drums were ever used for any purpose after their contents were removed, or in anywise became the subject of sale, or entered into the commerce of the country in competition with similar articles made here, or were material from which they are made.

It was further said that—

The drums in this case appear to be the usual containers of the imported merchandise, the character and use of which as such containers is ended when the contents are removed therefrom; that thereafter such drums do not appear to be devoted to any useful purpose, or to be adapted thereto, or to have any value, or to enter into or become a part of the merchandise of this country for any purpose. From the fact that when subjected to heat they come apart it would seem that they were not of durable construction. They are, therefore, clearly distinguishable from the containers involved in the Marx & Rawolle case, and although larger in size, fall within the classification of the containers involved in the Garramone case.

It is upon this latter statement that the importers base the contention that before duty shall be charged upon these boxes they should be shown to have a value after being imported and emptied. But this overlooks a marked difference in the two statutes under consideration. It was pointed out in the Garramone case that the cylindrical or tubular tanks or vessels provided for in paragraph 151 of the act of 1909 were substantial in character and capable of use, and the clear implication from the holdings of both these cases was that in the provision for vessels *for holding* gas, liquids, or other material tanks or vessels capable of being used as holders on at least more than one occasion were intended. The present case presents no such question.

Upon this record it is clear that the lemon boxes of the character of those introduced in this case are the ordinary, usual boxes containing lemons. It follows that they were the boxes in contemplation of Congress when the paragraph in question was enacted, and it is enough for this court to find that the merchandise in question answers the description of the paragraph under which it is assessed.

The decision of the board was clearly right and is *affirmed*.